50

ELSIE J. RODRÍGUEZ, Plaintiff and Appellant, *v.* PABLO ÁLVAREZ ZUMAQUERO, Defendant and Appellee; JUAN T. PEÑAGARÍCANO, in his capacity of Administrator of the Economic Stabilization Administration, Intervener and Appellee.

No. R-64-123.     Decided March 15, 1965.

*Carlos D. Vázquez* for appellant. *Miguel Franquiz Ventura, Alvaro Ortiz, Eduardo A. Ruiz,* and *José E. Rodríguez Rosaly* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Appellant leased to appellee a dwelling owned by her for a rent of $85 under a verbal lease contract on a month-to-month basis. The dwelling was constructed subsequent to October 1, 1942. During several years the tenant paid the $85 rent without there being during such period a different rent frozen by law, or a reasonable rent other than that fixed by the Economic Stabilization Administrator. Eventually the landlady registered the dwelling without altering the $85 rent. However, on the Administrator's initiative and as a result of other investigations, on October 22, 1963, the Administration entered an order fixing a reasonable rent of $96.25 a month to be effective as of November 1, 1963. Notice of this order was served on the tenant. On October 29 appellant wrote a letter to appellee in connection with the Administrator's order and demanded payment of the new

rent of $96.25 as of November 1. Upon the advice and recommendation of the Economic Stabilization Administration itself, the appellee insisted on paying the former rent. As a result of that situation, on November 22 and December 2, 1963, appellant sent letters to him demanding the new rent. In the letter of December 2, 1963, she advised him for the first time that if he failed to pay that amount she would file an unlawful detainer proceeding. A few days later, on December 6, the tenant paid the months of November and December. At the request of the Administration, thereafter he continued to resist payment, and upon recommendation also of the Administration he deposited the sum of $85 in the District Court of Bayamón.

On February 17, 1964, appellant again wrote to the tenant returning a check for the sum of $85, and warned him that if he did not pay the rent for the two months which would fall due on February 19, "she would be compelled to bring action to eject him." The four letters from appellant to the tenant were written by her attorney. In view of the tenant's refusal, on March 3, 1964, appellant finally filed an unlawful detainer proceeding for nonpayment of the two months due January 19 and February 19, 1964.

On March 17 the Economic Stabilization Administration petitioned for intervention in that action, and the same was granted. The tenant answered the complaint alleging as a defense that the Administration had informed him that he was not bound to pay the fixed rent of $96.25, but rather the former of $85. In his petition for intervention the Administrator alleged before the court the following:

"This Administration wishes to state that as a result of having agreed on a rent of $85 a month, which is lower than that recently fixed, it advised the tenant to deposit the rent in the District Court of Bayamón, since the landlady was interested in collecting the last rent fixed.

"That notwithstanding the increase of the lease rent, this Administration is of the opinion that the rent which the tenant

is bound to pay is the stipulated rent of $85 a month, since the Act contemplates that properties be leased for rents lower than those fixed by the Administration."

He based his position on the fact that at the bottom of the order of October 22, 1963, fixing a reasonable rent of $96.25, there was a stamp affixed containing the following notice:

"If there should exist a contract between the parties, the landlord shall have no right to collect the new rent authorized hereunder until the expiration of the term of such contract, unless it is specified therein that the rent agreed upon is subject to determination by this office."

The trial court dismissed the unlawful detainer action but for the following

### CONCLUSIONS OF LAW

"1. Plaintiff maintains that her right to collect a rent of $96.25 a month arises from a new contract made between the parties at the time defendant Álvarez Zumaquero paid the $96.25 rent for a period of two months. Plaintiff is not right. Let us see.

"Section 3391 of Title 31 L.P.R.A. provides: There is no contract unless the following requisites exist: 1. The consent of the contracting parties. 2. A definite object which may be the subject of the contract. 3. The cause for the obligation which may be established.

"2. Assuming that defendant gave his implied consent in this case agreeing to pay the increased rent, we cannot overlook the fact that intimidation is one of the vices which void consent, and, consequently, the contract.

"3. Section 3406 of Title 31 L.P.R.A. provides:

'Violence exists when, in order to exact the consent, irresistible force is used.

'Intimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants.

'In order to classify the intimidation, the age, sex, and status of the person must be considered.

'Fear of displeasing the persons to whom obedience and respect are due shall not annul the contract.'

"4. In interpreting § 1267 of the Spanish Civil Code, which is identical with our section *supra,* Manresa says in vol. 8, 4th ed.:

'It is also essential that there be threat to cause *harm,* and we stop at this only word without considering the adjectives which follow since, although the lawmaker does not consider as a harm that which the law itself protects or imposes, we deduce therefrom the important consequence that the harm must be unjust, and that one who merely claims his right without abusing it does not intimidate. Thus, a debtor who agrees to pay under threat of resorting to the courts and the costs of the litigation, may not allege that his consent was void; yet, it will be if the creditor who exceeds the limits of his right has wrung from the debtor, by the same legal threats, a novation of the contract or the confession of a greater debt.'

"5. There is no question that if a new contract had existed in the case under consideration, defendant's consent was obtained by plaintiff's threats of taking judicial action, and in so doing she exceeded the limits of her rights."

To review that ruling we issued the present writ of review. Appellee has not appeared. The Economic Stabilization Administration appeared to contest the issuance of the writ, and has subsequently filed a brief on the merits. It insists before us, as it did before the trial court, that by reason of the note stamped at the bottom of the order the tenant was not obligated to pay the rent fixed by it.

These lease relations intervened by the State frequently give rise to complex litigious questions. Proof of this is our decisions and the decisions of other courts. Unlike what has been said, we have in this case a very simple situation which was rendered complex. According to § 6 of the Reasonable

Rents Act,* the Administrator is empowered to fix a reasonable rent in those cases in which the dwelling or building was constructed subsequent to October 1, 1942, as is the case here. In the meantime, and until a reasonable rent is fixed, the first rent charged and paid at the will of the parties has been the permissible rent. *Aparicio* v. *Peñagarícano, Adm'r*, 84 P.R.R. 386, 390 (1962). In that case we made a detailed exposition of all types of legal or permissible rents under the rent legislation. See 17 R.&R.P.R. § 186–6.

■■ Since the lease in this case is verbal, without a fixed term, in which a monthly rent was fixed, the duration of the contract is one month, according to the provisions of § 1471 of the Civil Code, 1930 ed. In every case the lease ceases automatically without the necessity of special notice upon expiration of the term, according to this section. As of November 1, 1963, the landlady had the unquestionable right to collect and receive the reasonable rent fixed by the Administrator in the amount of $96.25. The Administrator's order fixing that rent created a state of law in her favor which she could also assert by the unlawful detainer action when the tenant refused to pay that rent. On the other hand, it does not appear that the tenant sought any relief against such order before the Administrator or before the courts, nor that the Administrator, on his initiative, altered or set the same aside.

■ The position of the Administration advising the tenant to disregard its own order without having modified the same, based on the note affixed at the bottom thereof, is untenable. Regardless of the legal effect of such stamp or notice in this specific case, it could be clear for an agency specialized on the matter that the same was not applicable except to lease contracts made for fixed terms, for terms in

---

* Section 6 of Act No. 464 of 1946, as amended, 17 L.P.R.A. § 186 (1961 ed.).

excess of the contract on a month-to-month basis involved here. There is no question that such notice responds to that provision of § 6 of the Rents Act to the effect that, notwithstanding what is otherwise provided by any *contract, pact, or agreement already made,* or *to be made* in the future, no landlord shall charge or receive for the use, occupancy, or lease of a rental property a rent higher than the basic rent or the reasonable rent fixed by the Administrator; provided, however, that rents lower than the basic rent may be charged, paid, or received. Within the philosophy of the Rents Act which protects the tenant, that provision means, and that is also the scope of such notice, that if there exists a contract or an agreement fixing a certain rent for a fixed term or period, and the rent agreed upon is afterwards increased by the Administrator, the tenant may not continue paying the lower rent agreed upon during such time as such agreement or contract shall last. That criterion was not applicable to the case at bar in which a lease contract terminated and arose after each one-month period.

■ There is nothing in the Act prohibiting or preventing that the reasonable rent fixed by the Administrator be enforced against the person who at that moment occupies the property. The position assumed here by the Administrator would lead to a different assumption, and would practically render ineffective the Act and the powers conferred upon the latter. The reasonable rent is fixed on the property—*res*—on the basis of standards of costs and of the usefulness and service which the premises afford to the tenant—*Martínez Rivera* v. *Peñagarícano, Adm'r,* 90 P.R.R. 529 (1964)—not on the basis of considerations respecting the person who occupies it.

■ Precisely for the purpose of settling lease disputes between a landlord and his tenant, the Act empowered the Administrator to fix reasonable rents subject to certain

standards, among them, that the effect of the reasonable rents fixed be prospective, *Aparicio, supra.* If they are higher than the existing rent, the landlord may not collect them for any period of time already elapsed; if lower than the existing rent, they do not entitle the tenant to reimbursement of those already paid, except those specific situations in which the Act expressly permits such reimbursements. *Cf. Eisele* v. *Orcasitas*, 84 P.R.R. 347 (1962); *Heirs of Bernat* v. *Peñagarícano, Adm'r*, 84 P.R.R. 506 (1962); *Aparicio* v. *Peñagarícano, Adm'r, supra.*

█ Regarding the treatment of this case in the judicial sphere, and without accepting that the statement made to a tenant that he will be evicted if he does not pay the legally authorized rent constitutes threat or intimidation, it seems that the legal grounds relied on to decide this litigation, on the basis of the existence of vices of the contractual consent, are not applicable since contracts executed as a result of the landlady's letters are not involved here. It was the old lease relation on a month-to-month basis which, instead of continuing to earn a rent of $85, as of November 1, 1963, earned a higher one fixed by the Administrator.

The judgment dismissing the unlawful detainer complaint will be reversed and the record remanded to the trial court for rendition of another judgment sustaining the unlawful detainer, subject to such other terms and conditions as may be applicable by the laws in force.